**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| C & K INDUSTRIAL SERVICES, INC., ) | CASE NO.1:04CV2154 |
| ) | |
| Appellant, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| Vs. ) | |
| ) | |
| LTV STEEL COMPANY, INC., ) | OPINION AND ORDER |
| ) | |
| Appellee. ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Appellant C & K Industrial Services, Inc.'s appeal from the Bankruptcy Court decision denying C & K's administrative claim. For the following reasons, the Court affirms the Bankruptcy Court's decision.

Appellant alleges it is owed $1,899,064.23 for post-petition industrial cleaning services provided LTV pursuant to a contract. The contract allowed for two types of payments: 1) Appellant would bill and be paid a contractually determined service rate for work performed for LTV; 2) Appellant would receive an amount based on "savings" that LTV incurred for industrial cleaning services. This amount of savings realized were calculated by subtracting from a predetermined cap of maximum expenditures for cleaning services the actual costs billed LTV

1

by C&K for work performed. C&K and LTV would split 50/50 any savings realized after the first $200,000 saved. This clause is referred to as the "savings incentive" or sometimes "bonus incentive" clause.

LTV contends the savings incentive did not benefit the estate. As the Appellant was paid in full on the service rate, the savings incentive was not necessary to preserve the estate and is not entitled to administrative status but was, in effect, a bonus.

## **Issues on appeal**

1) Whether the bankruptcy court abused its discretion by prohibiting C&K from presenting expert testimony on the savings incentive benefit to the estate, which ruling effectively dismissed C&K's administrative claim.

2) Whether the bankruptcy court erred as a matter of law in failing to presume the Contract price to be fair and reasonable.

3) Whether the bankruptcy court erred in construing the Contract to permit a non-written change in the Contract price.

## **Standard of Review**

In reviewing a bankruptcy proceeding, "the district court reviews the bankruptcy court's conclusions of law de novo and upholds its findings of fact unless they are clearly erroneous." *In re: Made in Detroit, Inc*., 414 F. 3d 576, 2005 Fed. App. 0286P, *8 (6th Cir., July 1, 2005); *255 Park Plaza Assocs. Ltd. P'ship v. Conn. Gen Life Ins. Co.* (*In re 255 Park Plaza Assocs. Ltd. P'Ship*), 100 F. 3d 1214, 1216 (6th Cir. 1996). "Where a bankruptcy court's determination involves a mixed question of fact and law, the district court "must break it down into its constituent parts and apply the appropriate standard of review for each part." *Wesbanco Bank*

*Barnesville v. Rafoth* (*In re Baker & Getty Fin. Servs., Inc.*), 106 F. 3d 1255, 1259 (6th Cir. 1997)(*quoting Investors Credit Corp. v. Batie* (*In re Batie*), 995 F. 2d 85, 88 (6th Cir. 1993)). A challenge to a determination of administrative claims is reviewed under an abuse of discretion standard. *Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp.* (*In re Pittsburgh-Canfield Corp.*), 309 B.R. 277, 281 (B.A.P. 6th Cir.2004). Moreover, a bankruptcy court's interpretation and implementation of its own orders is afforded substantial deference and is reviewed under an abuse of discretion standard. *Kendrick v. Blank*, 931 F. 2d 421, 423 (6th Cir. 1991).

Administrative expense priority is subject to 11 U.S.C. 503(b)(1)(A) which states in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including-
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

**Bankruptcy Court Decision**

The Bankruptcy Court determined C&K had been appropriately compensated for the clean up work it contracted for through its receipt of payment under the service rates portion of the contract. C&K failed to prove the savings incentive benefitted the estate. The Bankruptcy Court considered the testimony of Art Karas, president of C&K, who testified the rates charged LTV were lower than the rates under a 1996 contract between C&K and LTV because the current contract included the savings incentive which induced Appellant into agreeing to the lower service rates. The Bankruptcy Court did not find this testimony credible as the lower rate reflected the decision by LTV to contract solely with C&K for cleaning services as opposed to

3

using several cleaning contractors. The Bankruptcy Court did not consider or permit additional evidence of third party pricing to show a benefit to the estate as a sanction for discovery abuses by C & K.

The Bankruptcy Court also determined the savings LTV experienced for cleaning services was the result of reduced production of steel and not due to innovations or improvements in the efficiency of C&K.

The Bankruptcy Court determined Appellant did not meet its evidentiary burden of establishing that the savings incentive benefitted the estate and therefore, denied the claim in its entirety.

The Bankruptcy Court precluded C & K's proposed expert's testimony for failure to identify the expert one year after the court's discovery cut-off date. Also, the court determined the expert's testimony would necessarily require opinion testimony of third party rates for similar services to demonstrate LTV received a reduced rate. This testimony would violate the court's preclusion order for failure to provide discovery on C&K's pricing to third parties. C&K argues this preclusion resulted in essentially a dismissal of its administrative claims.

## Issue #I, The Bankruptcy Court's Sanction Order

On January 6, 2004, the Bankruptcy Court issued an Order precluding C&K from "introducing any evidence or making any argument relating to prices charged to parties other than Debtor or alleging that Debtor received favorable rates." This Order was entered as a sanction for continued abuses of the discovery process. The Bankruptcy Court entered an opinion outlining the numerous discovery delays of Appellant which resulted in sanctions. See *In re LTV Steel Co., et al.,* 307 B.R. 37 (Bankr. N.D. Ohio 2004). Appellant expressly

4

avers it is not challenging the validity of the sanction Order. Appellant is challenging the Bankruptcy Court's denial of C&K's motion to permit the presentation of expert testimony on the benefit conferred on the LTV estate by the savings incentive. Appellant contends the benefit to the estate is the touchstone of its administrative claim and by precluding Appellant's expert's testimony the Bankruptcy Court effectively and adversely determined Appellant's administrative claim.

Appellee contends the Bankruptcy Court properly excluded Appellant's attempt to proffer expert testimony in violation of the Court's discovery Order, sanction Order and Bankruptcy Rule 7026. Appellant's litany of discovery abuses caused substantial prejudice to Appellees in defending the administrative claim. Appellant's numerous delays in providing requested documentation of third-party pricing resulted in the delay of trial twice. The third-party pricing documents were essential to determine whether the savings incentive benefitted the estate.

Appellant contends it gave LTV a discount on the defined hourly cleaning rates and charges in exchange for the savings incentive. Without evidence of third-party pricing (i.e. what C&K charged other customers for similar work), C&K's claim of discounted service rates and charges would be unsupported and would severely hamstring its attempts to show how the savings incentive benefitted the estate.

Appellant further contends the Bankruptcy Court abused its discretion by precluding its expert testimony on the benefit conferred upon the estate by the savings incentive. Appellant contends it timely disclosed its expert and the expert's testimony would not have violated the sanction order.

5

**Timeliness of Appellants Identification of its Expert**

Appellant C&K discharged its original counsel shortly after the Bankruptcy Court issued its preclusion order. On February 6, 2004, present counsel entered an appearance. On February 18, 2004, Appellant forwarded to LTV's counsel an initial statement of its proposed expert. On March 1, 2004, Appellant filed a Motion for Order to permit expert testimony on the benefit of the savings incentive to the estate. The Motion was filed outside the Bankruptcy Court's prior discovery date for identifying experts. A most generous interpretation of the Bankruptcy Court's discovery schedule finds Appellant' expert was identified more than one year after the close of discovery. Appellant contends it identified its expert prior to the Bankruptcy Court's rescheduling of the trial date of April 22, 2004 in the February 18, 2004 letter to opposing counsel  Federal Rule 26 requires identification when no discovery deadline is set by the court, be made at least ninety days prior to trial or the date the case is to be ready for trial. By Appellant's own admission, its expert was identified outside the court's discovery order. Rule 26(C)'s ninety day requirement applies in the absence of a court discovery schedule. Therefore, Appellant's contention he complied with the requirements of Rule 26 is a red herring in that the discovery schedule was governed by court order and Appellant failed to identify its expert within the time prescribed by court order.

Appellant next contends the Bankruptcy Court's preclusion order did not preclude the testimony to be offered by Appellant's proposed expert. Appellant contends its expert was to opine on the fair market value of the cleaning services performed by C&K for LTV. Such an analysis did not require evidence of price rates C&K offered third parties. As the sanction

6

order stated, "C&K shall not offer any evidence of its third party price rates at the hearing on the objection to its claim nor make any argument related thereto or allege that LTV received favorable rates."

Regardless of whether Appellant's expert was to opine on C&K's pricing to third parties or market value of the services performed for LTV by C&K, both subjects necessarily require testimony that the rates received by LTV were favorable to LTV.  Such testimony would violate the express language of the Court's sanction order precluding such testimony or allegations.  The Sixth Circuit in *Kendrick*, 931 F. 2d 421, requires "substantial deference" be given the bankruptcy court in the implementation and interpretation of it's own orders.

This Court finds the Bankruptcy Court did not abuse its discretion and authority under Bankruptcy Rules in excluding Appellant's expert testimony.  "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1)... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed.R.Civ.P. 37(c), incorporated by Bankruptcy Rule 7026.  The Bankruptcy Court fully considered and addressed the issue of the harm to LTV if it allowed the late submission of expert testimony.  It found the late submission would have precluded LTV from conducting effective discovery sufficient to rebut the expert's testimony.  It held the discovery abuse "cripples LTV's ability to defend itself." *In re LTV Steel Co.,* 307 BR. 37 at 47.   Furthermore, it held that LTV's other creditors lacked the "resources and obligations to continue this charade for the benefit of one creditor." *Id.*  In light of such findings, this Court determines the Bankruptcy Court did not abuse its discretion in precluding Appellant's expert from testifying.

Nor does this Court find that the sanction order and subsequent preclusion of Appellant's expert effectively dismissed Appellant's administrative claim on the savings incentive.  The Bankruptcy Court did permit Art Karras, president of C&K to testify he was induced to reduce the hourly rates charged LTV in return for the savings incentive clause and allowed the introduction of evidence that the rates C&K charged LTV in a 1996 contract were greater than the rates charged LTV in the current contract.  The Bankruptcy Court did not find his testimony credible and ruled the savings incentive did not benefit the estate in light of testimony and evidence that the reduced cleaning costs incurred by LTV were not the result of more efficient cleaning methods by C&K but were the result of a reduced need for cleaning services due to the drop in production of steel that eventually forced LTV to file bankruptcy. Therefore, the Court finds the Bankruptcy Court did not abuse its discretion in precluding the testimony of Appellant's expert, as such sanction was warranted, did not result in dismissal of Appellants claim and was within Bankruptcy Court's authority.

**Issues II & III: the Bankruptcy Court failed to give the contract price terms the presumption of fairness and reasonableness and the Bankruptcy Court improperly construed the contract to contain non-written modifications.**

Appellant contends the Bankruptcy Court erred in finding Appellant failed to demonstrate the savings incentive clause benefitted the estate.  In analyzing the claims before it, Appellant contends the Bankruptcy Court failed to afford the contract the legal presumption that the contract rate is the fair and reasonable value of the product received. Appellant argues both the service rate and the savings clause should have been given the legally required presumption as the fair and reasonable price for cleaning services.  By distinguishing the two costs, the Court improperly failed to give the savings incentive the

8

legal presumption of fairness and reasonableness it afforded the service rate clause.

Appellee contends the Bankruptcy Court clearly addressed this issue in its Memorandum of Decision when it stated, " the reasonable value of services conferred *may* be what is specified in the contract." The Bankruptcy Court then cited case law in favor of, and in opposition to, such standard. However, the Court went on to hold C & K did receive the value of its services by payment under the service rate. The Bankruptcy Court noted the contract was very specific in the rates charged for specific cleaning services performed, (i.e. use of a vacuum truck $34.95 an hour). Having received its duly contracted for compensation for cleaning services rendered, Appellant failed to prove the savings incentive benefitted the estate. In addition, LTV argues the savings incentive was not an automatic component of the contract. If LTV's cleaning costs exceeded the fixed cap, C&K would not have received any monies under the savings incentive agreement. Likewise, LTV contends and the Bankruptcy Court agreed, the Contract terms allowed for a reduction in the cap to reflect decreased production and corresponding reduction in the need for cleaning services. At trial, LTV was able to prove the reduced costs of cleaning were due to the gradual reduction in steel production due to market forces and not due to increased efficiency of C&K.

The Bankruptcy Court conducted a trial on April 20, 2004. The Bankruptcy Court determined Appellant did not prove the savings incentive benefitted the estate, as all cleaning services were paid by the service rate. Most importantly the Bankruptcy Court held, "even if the court were to presume that a contract specifies the reasonable value of the consideration rendered C&K has received compensation in the amount specified by the contract for its services." By failing to demonstrate the savings clause benefitted the estate in light of the

9

testimony before it, the Bankruptcy Court's denial of C&K's administrative claim was not an abuse of discretion but a logical result of its proper application of 11 U.S.C. 503(b)(1)(A) in light of the evidence before it.

C&K contends the Bankruptcy Court permitted LTV to modify the contract in contravention of its plain terms by accepting LTV's argument that the cap could be lowered for plant closings and work slowdowns. C&K believes the express terms of the contract require any terms or modifications must be evidenced by consent in writing. Nowhere does the contract allow for cap reduction due to plant closing or work slowdown due to market forces. Neither does the contract require C&K demonstrate efficiency or innovation in cleaning services as a condition precedent to collecting under the cost savings clause.

However, the Bankruptcy Court determined the following clause did not contain an exhaustive list of events permitting adjustment to the cap.

> The expenditure limit would be adjusted to reflect events effecting {sic} the costs of the typical vacuuming, waterblasting and street sweeping service work. Items such as strikes, non-typical work, disasters, allowable price changes, major capital projects or work performed for others would necessitate the adjustment of the expenditure limit.

The Bankruptcy Court held the phrase "such as" indicates the above list is a non-exhaustive list of events permitting reduction in the cap number and permanent work slowdown was an event necessarily affecting the costs. The occurrence of one or more of these events permitted reduction in the cap without prior written consent. This Court agrees that any cap reduction due to an event affecting the costs of cleaning permitted an adjustment to the cap without prior written consent per the plain language of the contract.

The interpretation of a contract is a matter of law to be determined by the court. *Terrell v.*

10

*Uniscribe Professional Services, Inc.*, 348 F.Supp.2d 890 (N.D.Ohio 2004). The Court finds the Bankruptcy Court properly applied the law and finds the contract permitted cap reductions without prior written consent per its plain and unambiguous language.

The Court finds the Bankruptcy Court did not abuse its discretion in denying Appellant's expert testimony, nor in finding Appellant received compensation for services rendered and the savings incentive did not benefit the estate. Finally, the Bankruptcy Court's holding that the cap reduction was permitted under the express terms of the contract without prior written consent was not improper. Therefore, the Court overrules Appellant's appeal and affirms the Bankruptcy Court's decision.

IT IS SO ORDERED.

September 22, 2006        s/Christopher A. Boyko
Date        CHRISTOPHER A. BOYKO
       United States District Judge